FILED

2011 Feb-24  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PETER JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-0786-NE** |
| | ) | |
| **AUTOZONE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Peter Johnson, asserts claims against his current employer, AutoZone, Inc., under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII"), for failure to accommodate plaintiff's religious beliefs,[1] religious discrimination,[2] religious harassment,[3] and retaliation.[4]  This case is before the court on defendant's motion for summary judgment as to all of plaintiff's claims.[5]  Upon consideration of the parties' pleadings, briefs, and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted for the reasons stated herein.

---

[1] Doc. no. 1, ¶¶ 48-54 (Complaint, Count I).

[2] *Id.* ¶¶ 55-61 (Count II).

[3] *Id.* ¶¶ 62-66 (Count III).

[4] *Id.* ¶¶ 67-72 (Count IV).

[5] Doc. no. 54 (Defendant's Motion for Summary Judgment); *see also* doc. no. 55 (Defendant's Brief in Support of its Motion for Summary Judgment).

# I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[6]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

---

[6] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

>[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS

Plaintiff, a devout member of the Seventh-Day Adventist Church, currently works full-time for defendant, AutoZone, Inc. ("AutoZone"), as a Parts Sales Manager.[7]  Due to plaintiff's religious beliefs, he can never work on his Sabbath day, which spans from Friday at sundown to Saturday at sundown each week.[8]  AutoZone hired plaintiff to work as a part-time "hub driver" at its South Parkway store in February of 2003.[9]  At that time, Store Manager Roy Lee supervised the employees

---

[7] Evidentiary Submission of Defendant, Exhibit 1 (Deposition of Peter Johnson (hereafter "Johnson Deposition")), at 142-43, 157-60, 202.

[8] *Id.* at 167-70, 202.

[9] *Id.* at 34-38, 140-41; Evidentiary Submission of Defendant, Exhibit 3 (Deposition of Roy Lee (hereafter "Lee Deposition")), at Exhibit 2 ("AutoZone Hiring Checklist" reflecting that plaintiff was hired on February 13, 2003).  Plaintiff was initially hired by AutoZone in 1997, but that employment was short-lived for disputed reasons that are irrelevant for the purposes of this action. Johnson Deposition, at 28, 30-34.

at the South Parkway store.[10]  Plaintiff received Mr. Lee's permission to take off work during his Sabbath days.[11]  Mr. Lee testified that he granted plaintiff's request because plaintiff was not needed, and religion was not a factor in his decision.[12]

In 2003, plaintiff became a full-time employee when AutoZone promoted him to the position of Parts Sales Manager.[13]  Although unwritten, AutoZone had in effect (and still maintains) a policy that "to be a full-time employee at Auto Zone, you have to be available seven days a week, no matter what."[14]  Nevertheless, Store Manager Roy Lee approved plaintiff's renewed request for an exemption because, at his particular store, Mr. Lee "could get away with him not working Fridays and Saturdays."[15]  Lee "might have," but was unable to recall whether he reported plaintiff's need for a religious accommodation to anyone directly above him or to AutoZone's Department of Human Resources.[16]

In either 2003 or 2004, Store Manager Lee recommended plaintiff for

---

[10] Johnson Deposition, at 35-36; Lee Deposition, at 22, 27-30.

[11] Johnson Deposition, at 35-36; Lee Deposition, at 22, 27-30.

[12] Johnson Deposition, at 37-40, 195, 223; Lee Deposition, at 30-32, 59.

[13] Johnson Deposition, at 34-39.

[14] Lee Deposition, at 31; *see also* Evidentiary Submission of Defendant, Exhibit 2 (Deposition of Bruce Sherer (hereafter "Sherer Deposition")), at 72; Evidentiary Submission of Defendant, Exhibit 8 (Deposition of Mike Riley (hereafter "Riley Deposition")), at 29.

[15] Lee Deposition, at 30-33.

[16] *Id.* at 32-33.

AutoZone's Manager-in-Training ("MIT") Program.[17]  The MIT program was an eight week, informal training course intended to familiarize trainees with management information.[18]  Completion of the program in no way guaranteed trainees a management position, but District Manager Bruce Sherer — who supervises ten AutoZone stores in North Alabama and approximately 120 employees — allegedly told plaintiff that there was a possibility that he could be promoted to an Assistant Manager position after completion of the MIT program.[19]  Plaintiff testified that Mr. Lee assured him that it would not be a problem for plaintiff to continue to observe his Sabbath day throughout the training and afterwards.[20]  Further, plaintiff testified that Lee had cleared the training with AutoZone's District Manager for North Alabama, Bruce Sherer.[21]  Mr. Lee, however, testified that he informed plaintiff that higher management members were required to work Saturdays and be available seven days a week.[22]  According to Lee, he reminded plaintiff of this fact "before, during, [and] after" plaintiff enrolled in the MIT program.[23]  Plaintiff was recommended for the

---

[17] Sherer Deposition, at 57-58; Lee Deposition, at 36- 44, 82-82.

[18] Sherer Deposition, at 58-60, 290-91.

[19] *Id.* at 58-60, 290-91; *see also id.* at 272-274.

[20] Johnson Deposition, at 145-146, 148-151, 154-55.

[21] *Id.*

[22] Lee Deposition, at 80-81, 84.

[23] *Id.* (bracketed alteration supplied).

program despite Lee's knowledge that plaintiff would not work on Saturdays, because Mr. Lee "hoped" plaintiff would agree to work seven days a week if faced with the opportunity to move to a higher management position.[24]

Relying solely on Store Manager Lee's word that "everything was fine" regarding plaintiff observing the Sabbath while undergoing management training, plaintiff enrolled in the MIT program.[25]  For payroll purposes, MIT participants like plaintiff were coded as "manager-in-training," but the position and pay was identical to that of a Parts Sales Manager, the position that plaintiff held while enrolled in the MIT program.[26]  After about a month in the program, District Manager Bruce Sherer met with plaintiff and explained that he would have to either withdraw or be terminated.[27]  Mr. Sherer informed plaintiff that he "ha[d] to be available on Saturdays" to remain in the program.[28]

After his conversation with Mr. Sherer, plaintiff stepped down from the MIT program and returned to his position as Parts Sales Manager at the South Parkway store.[29]  Plaintiff worked in that position under Store Manager Roy Lee for

---

[24] *Id.* at 44, 82-83.

[25] Johnson Deposition, at 145, 153-54.

[26] Sherer Deposition, at 64, 70, 293-94.

[27] Johnson Deposition, at 146, 152, 225-227; Sherer Deposition, at 64, 67-70.

[28] Johnson Deposition, at 152.

[29] *Id.* at 152-53, 156; Sherer Deposition, at 69.

approximately three years, and then transferred to AutoZone's Jordan Lane Store.[30]

Upon transfer to that store, plaintiff was under the supervision of Store Manager Joe Courtney.[31]  Mr. Courtney also agreed to give plaintiff his Sabbath days off, and he even afforded plaintiff an exemption from work on Wednesday nights to accommodate plaintiff's desire to preach on those nights.[32]  Courtney noted that he did so despite other employees who "[g]rumbled about it," including another Parts Sales Manager who allegedly complained that the arrangement was unfair.[33]  Mr. Courtney did this "not out of the kindness of [his] heart," but simply because "that's the way it had been done" in the past.[34]

Plaintiff began asking Director Sherer for a promotion to Store Manager and various other promotions.[35]  Sherer repeatedly responded that plaintiff's unavailability from Friday evening through Saturday evening was an issue, and that there was nothing that Sherer could do about it.[36]  However, Mr. Sherer also allegedly gave plaintiff a list of things that he could do that *might* result in some sort of a

---

[30] Johnson Deposition, at 141-42, 144-45; Lee Deposition, at 58.

[31] Johnson Deposition, at 141-45; Lee Deposition, at 58.

[32]  Evidentiary Submission of Defendant, Exhibit 4 (Deposition of Joe Courtney (hereafter "Courtney Deposition")), at 33-36.

[33] *Id.* at 36-37.

[34] *Id.* at 38.

[35] Johnson Deposition, at 65-66, 139-40, 263-64.

[36] *Id.* at 65-66; Sherer Deposition, at 139-40.

promotion.[37]  In that regard, plaintiff testified as follows:

> Bruce Sherer informed me, he led me to believe if I did certain things in his words I'll see what I can do.  The subject we were discussing was promotion because I would always ask when I can be promoted.  When are you going to allow me to get out of this position?  I have a roof or a ceiling over my head.  I can't grow with the company.  And Bruce would say well, bring up the WITT scores at [the Parkway Memorial store] when I [sic] sent back there.  That's when I got the nickname the selling machine because I could sell anything, and then I would go back to Bruce well, I got the scores up, everybody calls me the selling machine, and then he would say well, you know, let's get all of this up and let's do these things, and I would say absolutely, because I believed in Bruce 100 percent, and I did what he asked me to do.  And then he changed it again.  Well, I want you to train for me, so I did the training job, and I did it extremely well . . . . It was hard because I wanted more.  I'm more than a [Parts Sales Manager].  I'm more, and it never happened.[38]

A Store Manager position opened sometime prior to June of 2008 at the Jordan Lane store when Joe Courtney decided to leave the company.  While serving as the Jordan Lane Store Manager, Joe Courtney often used his vacation days to take approximately two Saturdays off each month in order to participate in "drag racing" activities.[39]  On at least a few occasions, Mr. Courtney took three Saturdays off in a single month.[40]  Even though Director Sherer was aware of Courtney's Saturday vacation days as early as 2004 — which were, at that time, less frequent than the

---

[37] *E.g.*, Johnson Deposition, at 263-64.

[38] *Id.* at 264-65 (bracketed alterations supplied).

[39] Courtney Deposition, at 18-19, 25-26.

[40] *Id.* at 18-19.

Saturdays taken off by Courtney in 2007 and 2008 — he did not squarely confront Mr. Courtney about the issue until sometime in 2008.[41]   During that discussion, Director Sherer informed Courtney that he could no longer take his vacation days on Saturdays because it was one of the busiest days of the week.[42]   Sherer told Mr. Courtney that he needed to "make a decision" about whether he wanted to remain Store Manager and work Saturdays or continue racing on the weekends.[43]   Although the details are unclear in the record, Joe Courtney effectively resigned from his position as Store Manager and as an AutoZone employee shortly thereafter.[44]

Plaintiff was not considered for the Jordan Lane Store Manager position due to his unavailability.[45]   Sherer testified that plaintiff's choice to take Friday through Saturday evenings off was the only reason that plaintiff was not considered for the promotion.[46]   In Sherer's own words, plaintiff was a "consistently good" and "quite good" employee, and that he "never had any issues with [plaintiff's] performance."[47]   Joe Courtney recommended his Assistant Store Manager, James Pruett, to replace

---

[41] *Id.* at 24-26.

[42] Sherer Deposition, at 151-52; Courtney Deposition, at 54-55, 18-19.

[43] Sherer Deposition, at 150-52; Courtney Deposition, at 54-55, 18-19.

[44] Courtney Deposition, at 15.

[45] Sherer Deposition, at 159, 162.

[46] *Id.* at 157, 362-363.

[47] *Id.* at 118-21.

him, allegedly because Pruett was familiar with the duties of the job, had inventory management knowledge, and had good "people skills."[48]  Likewise, Director Sherer recommended James Pruett as the next Store Manager at Jordan Lane, and Sherer specifically informed AutoZone management personnel, including Regional Manager, Bruce Carroll, and Regional Human Resources Director, Kay Kill, of plaintiff's unavailability during his Sabbath days.[49]  There was no discussion of, or inquiry into, promoting plaintiff while further accommodating his need for Friday through Saturday evenings off for religious reasons.[50]  Regardless, Sherer testified that even if plaintiff had been available seven days a week, James Pruett would have been his first choice because Pruett was "more developed" and had been a management-level employee much longer than plaintiff.[51]  Accordingly, Mr. Pruett was promoted to the position of Jordan Lane Store Manager in May of 2008.[52]  Unlike plaintiff, Pruett had allegedly never had a high evaluation score, and had allegedly never been told by anyone at AutoZone that he was a "good employee."[53]

---

[48] Courtney Deposition, at 59-60.

[49] Sherer Deposition, at 158, 165-66, 168.

[50] *Id.* at 169-70;  Evidentiary Submission of Defendant, Exhibit 7 (Deposition of Kay Hill (hereafter "Kay Deposition")), at 36.

[51] Sherer Deposition, at 156-57.

[52] *Id.* at 181-82.

[53] Evidentiary Submission of Defendant, Exhibit 5 (Deposition of James Pruett (hereafter "Pruett Deposition")), at 132-33, 175.

Following James Pruett's promotion to Store Manager, plaintiff ensured that he could continue observing his Sabbath while employed as a Parts Sales Manager.[54] Mr. Pruett had no problem accommodating plaintiff because it did not cause any undue hardship on the Jordan Lane store.[55]   In fact, plaintiff's schedule was complimented by other religious employees in the store because plaintiff was available to work every Sunday.[56]

Plaintiff testified that, regarding his Sabbath and career progression, Mr. Pruett would "say nice things and then on the other hand would say something negative, so [plaintiff] just took it with a grain of salt."[57]   Over ten times on unspecified dates, Pruett "rag[ged]" plaintiff about taking Saturdays off, noting that "Saturday was the busiest day and [Pruett] would make sure that [plaintiff] would look at the schedule to see the sales for [that] day."[58]   Pruett also told plaintiff that he was "a broken record about his Sabbaths," and that plaintiff needed to quit talking to him about Saturdays.[59] Even though plaintiff felt that "sometimes" Mr. Pruett's comments constituted

---

[54] *Id.* at 36-38.

[55] *Id.*

[56] Sherer Deposition, at 72-73.

[57] Johnson Deposition, at 240.

[58] *Id.* at 237 (bracketed alterations supplied).

[59] *Id.* at 238-240.

harassment, he testified that he "never reported what actually happened to anyone."[60]

Regarding the conduct that he claims was harassment, plaintiff testified as follows:

"I never said anything, I can tell you that.  I never contacted anyone.  I used my faith

to pull me through . . . . I never contacted anyone."[61]

In May of 2008, the Madison Store Manager was terminated, which created

another promotional opportunity for plaintiff.[62]  Plaintiff approached Director Sherer

about the opening.[63]  Mr. Sherer was, again, unreceptive.[64]  When plaintiff inquired

as to whether his lack of promotions was due to his observance of the Sabbath, Sherer

responded, "[i]t's because of your availability."[65]  After the conversation, Sherer

spoke with Regional Director of Human Resources, Kay Hill, about plaintiff's

repeated requests for promotions.[66]  He did not inform Ms. Hill that plaintiff had

questioned his denial of promotion due to his religion because Sherer did not view

the situation as one involving a potential religious discrimination issue.[67]  Sherer

testified that his decision not to promote plaintiff was due to the fact that plaintiff was

---

[60] *Id.* at 240.

[61] *Id.* at 253-54.

[62] Sherer Deposition, at 186, 196-97.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 197 (bracketed alterations supplied).

[66] *Id.* at 198-99.

[67] Sherer Deposition, at 199-201.

not available to work seven days a week if needed, regardless of what day of the week he needed off.[68]

Prior to June of 2008, Keith Marchland was transferred to the Jordan Lane store to "help out" James Pruett as a "temporary Assistant Manager."[69]  Mr. Marchland assisted in that temporary position for less than six months.[70]  When Store Manager Pruett left for vacation, Marchland handled employee scheduling.[71]  During that time, plaintiff avers that Marchland attempted to force him to work on his Sabbath.[72]  Marchand stated he was going to make the schedule out his way, and that plaintiff's Sabbath day was not his concern.[73]  Plaintiff responded by informing Mr. Marchland that he was hired in keeping with his Sabbath.[74]  Mr. Marchland then stated that he was "just doing what [he] was told to do."[75]  Plaintiff was not actually required to work on his Sabbath.[76]

Mr. Marchland later apologized to plaintiff.  He relayed to plaintiff that he was

---

[68] *Id.* at 201, 237.

[69] *Id.* at 131-32; Evidentiary Submission of Defendant, Exhibit 6 (Deposition of Keith Marchland (hereafter "Marchland Deposition")), at 22, 26, 28, 31-35.

[70] Sherer Deposition, at 131-32; Marchland Deposition, at 22, 26, 28, 31-35.

[71] Johnson Deposition, at 242.

[72] *Id.* at 241-242. *Cf.* Marchand Deposition, at 40-41.

[73] Johnson Deposition, at 242-243.

[74] *Id.* at 243.

[75] *Id.*

[76] *Id.* at 242.

"told by higher-ups that they didn't give a you know what about your Saturday Sabbath stuff."[77]  Plaintiff was unable to ascertain particularly which "higher-ups" made those comments to Marchland.[78]  Plaintiff reported the confrontation, and Mr. Marchland's comments, to James Pruett upon his return to the store.[79]  Pruett did not pass plaintiff's reports to his supervisor as required under AutoZone policy.[80]

On June 25, 2008, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging religious discrimination and retaliation.[81]  Therein, he referred to the above-mentioned higher management position openings, and stated that he had "been repeatedly denied any promotional opportunity because of [his] religion and religious practices."[82]

---

[77] *Id.* at 244, 246. *Cf.* Marchand Deposition, at 56-57.

[78] Johnson Deposition, at 244.

[79] *Id.* at 243-246, 249.

[80] Sherer Deposition, at 141-142.

[81] *See* doc. no. 60, Exhibit A.

[82] *Id.* at 1-2 (bracketed alteration supplied).  Plaintiff claimed in his charge of discrimination that he was denied a promotion to assistant manager at AutoZone's Governor's Drive Store.  *Id.* There is no *admissible* evidence in the record to support that proposition, and it is, therefore, omitted from this summary of relevant facts.  "EEOC charges, grievances, and claims, including the investigations of such charges, grievances and claims of the Plaintiff and other former or current . . . employees including the position statements of the complainants and the resolution or settlement of any such charges, grievances, or claims are inadmissible for a number of reasons, including on the basis of relevance, a Rule 403 balancing test, and hearsay." *Frazier v. Ind. Dep't of Labor*, No. IP01-0198-C-T/G, 2003 WL 21254424, at *4 (S.D. Ind. Mar. 17, 2003) (citing *Tulloss v. Near N. Montessori Sch. Inc.*, 776 F.2d 150, 154 (7th Cir. 1985)); *see also Stolarczyk v. Senator Int'l Freight Forwarding, L.L.C.*, 376 F. Supp. 2d 834, 841-42 (N.D. Ill. 2005) (noting presumption of inadmissibility with EEOC charges and refusing to admit the plaintiff's charges even under the residual hearsay exception); *Walker v. Fairfield Resorts*, No. 3:05-0153, 2006 WL 724555, at * 8

14

In August of 2008, a few months after his promotion to Jordan Lane Store Manager, Mr. Pruett issued performance evaluations to his employees.[83]  Plaintiff received the highest rating possible and a pay increase from $14.52 per hour to $14.79 per hour.[84]  At that time, however, Pruett was a "brand-new store manager," and Director Sherer, accordingly, sat down with him to review the evaluations.[85]  Sherer concluded that many employees, including plaintiff, were evaluated improperly and given erroneous raises.[86]  Mr. Sherer directed Pruett to lower plaintiff's evaluation from a perfect score (categorized as "exceptional") to a slightly less than perfect score (categorized as "exceptionally met").[87]  According to Sherer, "nobody's exceptional," or perfect.[88]  On October 19, 2008, plaintiff's rate of pay was

---

(M.D. Tenn. March 21, 2006) (noting that "an EEOC charge is hearsay and, even though sworn to under the penalty of perjury, inherently unreliable because the charge is drafted in anticipation of litigation") (citation omitted).

[83] *E.g.*, Pruett Deposition, at 114-115; *see also* Sherer Deposition, Exhibit 6.

[84] Sherer Deposition, at 211-12; *see also id.*, Exhibit 5.

[85] Sherer Deposition, at 211-12.

[86] *Id.* at 211-12, 319-20; Evidentiary Submission of Defendant, Affidavit of Bruce Sherer (hereafter "Sherer Affidavit"), ¶¶ 3, 5, 6.

[87] Pruett Deposition, at 168; Johnson Deposition, at 254-55.  According to plaintiff, James Pruett stated, "kind sir, I'm just a messenger," and that Director Sherer instructed Pruett to adjust plaintiff's score to "come up average."  Johnson Deposition, at 254-55.  Even if this is considered non-hearsay and admissible evidence, it does not adequately support the proposition asserted in plaintiff's response brief that his score was, in fact, lowered to an "average" score. *See* doc. no. 59, at 21, ¶ 15.

[88] Johnson Deposition, at 255, 260.

15

reduced to $14.52 per hour.[89]  A week later, on October 26, 2008, AutoZone adjusted the Jordan Lane store employees' pay to reflect the corrected evaluations, and plaintiff received a pay increase from $14.52 to $14.92, a higher raise than he received under his original evaluation.[90]  When asked how he knew that the evaluation change was "done because [plaintiff] filed a[n EEOC] charge," plaintiff responded, "I don't know, sir.  It was never discussed with me."[91]

Plaintiff's Notice of Rights to Sue Letter was mailed to him by the EEOC on January 28, 2009.[92]  He filed this lawsuit on April 23, 2009.[93]  Plaintiff claims that sometime after the filing of this action, Store Manager Pruett began calling plaintiff his "friend to the end."[94]  Mr. Pruett also allegedly told plaintiff that "no matter what happens, you're my friend till the end," and that "you're gonna get yours in the end."[95]

In early 2010, plaintiff had an argument with his co-worker, James Brownlee.[96]  Mr. Brownlee raised his voice at plaintiff, acted unprofessionally, and also said

---

[89] Sherer Deposition, at 211-12; *see also id.*, Exhibit 5.

[90] Sherer Deposition, at 213, 230, 272-73; Sherer Affidavit, ¶¶ 6-8.

[91] Johnson Deposition, at 260 (bracketed alterations supplied).

[92] *See* doc. no. 19, Exhibit 1.

[93] *See* doc. no. 1.

[94] Johnson Deposition, at 253-258.

[95] *Id.* at 254-56.

[96] *Id.* at 82-83.

something to the effect of, "I don't care if you have a lawsuit."[97]   AutoZone investigated the altercation and took corrective action against Mr. Brownlee for what it found to be a "serious violation."[98]   Plaintiff, however, was not disciplined in any way.[99]

Plaintiff continues to work in the Parts Sales Manager position at the Jordan Lane Store, and has alleged no further incidents that are relevant to this action.[100]   He is currently the second highest paid Parts Sales Manager out of approximately thirty-five in AutoZone's North Alabama District.[101]   Plaintiff testified that throughout his entire employment with AutoZone, he has never been required to work on his Sabbath day, nor has he done so.[102]   Further, plaintiff was routinely told that it was his availability, not his religion, that prevented him from being considered for promotion to senior management.[103]

## III.  DISCUSSION

### A.    Plaintiff's Claims for Religious Discrimination Under Title VII

---

[97] Sherer Deposition, at 143-46.

[98] Hill Deposition, at 85-86.

[99] *Id.*

[100] *See, e.g.*, Johnson Deposition, at 142-43.

[101] Sherer Deposition, at 213, 230, 272-73; Sherer Affidavit, ¶¶ 6-8.

[102] Johnson Deposition, at 38-40, 90-91.

[103] *See*, *e.g.*, *id.* at 65, 152-54; Sherer Deposition, at 159, 196-97.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee solely because of his or her religious beliefs. Section 703(a)(1), codified as 42 U.S.C. § 2000e-2(a)(1), provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [among other things] such individual's . . . religion . . . ." *Id.* (bracketed alteration supplied).  In addition, Title VII imposes an affirmative obligation on an employer to attempt to reasonably accommodate an employee's religious observances or practices.  Under 42 U.S.C. § 2000e(j), "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  *Id.*

Thus, a plaintiff in a Title VII religious discrimination action has two legal theories available for the prosecution of his claims:  "disparate treatment" and "failure to accommodate."  *See*, *e.g.*, *Wilshin v. Allstate Insurance Co.*, 212 F. Supp. 2d 1360, 1370-71 (M.D. Ga. 2002) (citing *Chalmers v. Tulon Company of Richmond*, 101 F.3d 1012, 1017-18 (4th Cir.1996)); *Breech v. Alabama Power Co.*, 962 F. Supp. 1447, 1456 (S.D. Ala. 1997).  Plaintiff asserts both theories of religious discrimination in

18

this action.

### 1.    Failure to accommodate religious beliefs and practices

"Title VII requires that an employer 'make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" *Lake v. B.F. Goodrich Co.*, 837 F.2d 449, 450 (11th Cir. 1988) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).  AutoZone claims that there is no genuine issue of material fact as to plaintiff's religious accommodation claim.[104]

### a.    *Prima facie* case

A plaintiff demonstrates a *prima facie* case of religious discrimination for failure to accommodate religious beliefs by showing:  (1) he had a *bona fide* religious belief that conflicted with an employment requirement; (2) he informed his employer of his belief; and (3) he was discharged or disciplined for not complying with the conflicting employment requirement.  *See*, *e.g.*, *Lubetesky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1306 n.2 (11th Cir. 2002) (collecting cases from other circuits); *Beadle v. Hillsborough County Sheriff's Department*, 29 F.3d 589, 592 n.5 (11th Cir. 1994); *Wilshin*, 212 F. Supp. 2d at 1372; *Breech*, 962 F. Supp. at 1459.

It is undisputed that plaintiff's *bona fide* religious beliefs conflicted with his

---

[104] Doc. no. 55, at 13-22.

employment requirements, and that he informed his employer of his beliefs.[105]  As a devout Seventh-Day Adventist, plaintiff was unwilling to work between sundown Friday and sundown Saturday.[106]  The record is clear that he informed each of his various supervisors of the need to observe his Sabbath, and that he was not required to work on those days.[107]  AutoZone argues, however, that plaintiff has failed to establish the third element of a *prima facie* case — that he was discharged or disciplined for not complying with an employment requirement that conflicted with his *bona fide* religious belief.  *See Beadle*, 29 F.3d at 592 n.5.  Plaintiff was never discharged, despite AutoZone's policy that full-time employees must be available seven days a week.  The court, therefore, need only address whether plaintiff was subjected to "discipline" for insisting that he be off work during his Sabbath day.[108]

Plaintiff argues that AutoZone's denial of plaintiff's requests for promotion constitutes "discipline" for the purposes of establishing the third element of a *prima*

---

[105] *See* doc. no. 55, at 14; doc. no. 59, at 23.

[106] Johnson Deposition, at 201-02.

[107] Lee Deposition, at 32-33; Courtney Deposition, at 33-38; Pruett Deposition, at 36-38.

[108] Plaintiff claims that "it is undisputed . . .  that he was penalized by being denied even consideration for a promotion" due to his observance of the Sabbath.  Doc. no. 59, at 23.  A mere glance at defendant's brief in support of its motion for summary judgment reveals that defendant vehemently disputes that assertion, and the court is confounded that plaintiff could possibly claim otherwise in good faith, especially when he attempts to distinguish the cases cited by defendant in support of that dispute.  *See* doc. no. 55, at 14-16.

*facie* case.[109]   In doing so, plaintiff cites authority that is wholly irrelevant to his claim.  Specifically, plaintiff relies upon *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Grimsely v. Marshalls of MA, Inc.*, 284 Fed. Appx. 604 (11th Cir. 2008).   In *Burlington*, the plaintiff brought a claim against her employer for hostile work environment sexual harassment in violation of Title VII.  *Burlington*, 524 U.S. at 747-49.  The sole issue addressed by the Court was "whether, under Title VII . . . an employee who refuses the unwelcome and threatening sexual advances of a supervisor, yet suffers no adverse, tangible job consequences, can recover against the employer without showing the employer is negligent or otherwise at fault for the supervisor's actions."  *Id.* at 746-47 (citations omitted).  The Supreme Court noted that a supervisor's failure to promote, among a laundry list of other employer actions, may be sufficient for the purposes of holding an employer vicariously liable for sexual harassment.  *Id.* at 760-63 ("Without endorsing the specific results of [Circuit Courts'] decisions, we think it prudent to import the concept of a tangible employment action for resolution of the vicarious liability issue we consider here.  A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (bracketed

---

[109] Doc. no. 59, at 23.

21

alteration supplied).  Significantly, that case did not involve any claim for religious discrimination, let alone a specific claim for failure to accommodate a religious belief or practice.

The only other case relied upon by plaintiff, *Grimsely v. Marshalls of MA, Inc.*, 284 Fed. Appx. 604 (11th Cir. 2008), is equally inapposite to his accommodation claim.  In *Grimsely*, the single Title VII claim asserted by the plaintiff, a Caucasian ("white") male, was race-based disparate treatment.  *Id.* at 605.  The Eleventh Circuit upheld the district court's grant of summary judgment on that claim, finding that plaintiff's evidence was insufficient to establish that he was subjected to an "adverse employment action" when the plaintiff was "subjected to an increased workload, denied breaks while black supervisors were not, and forced to perform certain manual labor outside his job description."  *Id.* at 609.  The *Grimsely* decision has no bearing whatsoever on any of plaintiff's claims in this action.  Thus, plaintiff has provided no authority to support its argument that a refusal to promote constitutes "discipline" for the purpose of establishing a *prima facie* case of failure to accommodate a religious belief or practice.

Incredibly, however, plaintiff accuses AutoZone of citing irrelevant cases when, unlike plaintiff, AutoZone relies upon at least some authority that addresses

22

religious discrimination for failure to accommodate.[110]   AutoZone relies upon
*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998), *Davis v. Town of
Lake Park, Florida*, 245 F.3d 1232 (11th Cir. 2001), and *Dixon v. Palm Beach
County Parks & Recreation Department*, 343 Fed. Appx. 500 (11th Cir. 2009), in
arguing that plaintiff has failed to establish that he was "disciplined" for the purposes
of demonstrating a *prima facie* case.[111]   Neither *Wideman*, nor *Davis* involved claims
or issues that are relevant to the present action.  *See Wideman*, 141 F.3d at 1455-56
(addressing "adverse employment action" in the context of a race-based retaliation
claim); *Davis*, 131 F.3d at 128-40 & n.2 (addressing "adverse employment action"
in the context of a race-based disparate treatment claim, and noting that the standard
for "adverse employment action" is a distinct standard that is not applicable
wholesale to all forms of Title VII claims).  In order for the court to find otherwise,
it must conclude that an "adverse employment action" in a disparate treatment claim
is identical to "discipline" in a failure to accommodate claim.  Such a finding would
functionally conflate the separate religion-based discrimination claims of disparate
treatment and failure to accommodate, and ignore myriad authority recognizing those
claims as distinct theories of religious discrimination.  *See*, *e.g.*, *Breech*, 962 F. Supp.

---

[110] *See* doc. no. 59, at 23 n.7.
[111] Doc. no. 55, at 15-16.

at 1456.  Neither the court, nor the parties, has located any authority supporting the proposition that "adverse employment actions" and "discipline" fall under the same analytical framework.  The court is unwilling to be the first to vitiate the distinctions between those claims, particularly when there is apparently a complete absence of authority even hinting that it should do so.  *See Reed v. International Union*, 569 F.3d 576, 580 (6th Cir. 2009) (specifically declining to address whether "'discharge or discipline' should be understood to include any adverse employment action").

The other case relied upon by AutoZone, *Dixon v. Palm Beach County Parks & Recreation Department*, 343 Fed. Appx. 500 (11th Cir. 2009), squarely addressed a plaintiff's claim for failure to accommodate a religious belief.  *Dixon*, 343 Fed. Appx. at 501-02.  In that case, the Eleventh Circuit held that the plaintiff was not sufficiently "disciplined" under the third element of a *prima facie* case of failure to accommodate when plaintiff was "given a written record of counseling, was initially denied his requests for Sundays off, and was transferred" from his position.  *Id.* at 502.  In the present action, plaintiff has adduced no evidence that he was subject to any disciplinary measures equal to or greater than those noted in *Dixon*, yet the Eleventh Circuit found no "discipline" in that case.  *Id.*  However, that court offered little analysis or reasoning in support of its holding.

The Middle District of Georgia's decision in *Wilshin v. Allstate Insurance Co.*,

24

212 F. Supp. 2d 1360 (M.D. Ga. 2002), is more helpful in addressing plaintiff's argument.  In *Wilshin*, the district court granted summary judgment in the employer's favor when a devout Jewish plaintiff failed to present evidence that he was "discharged or disciplined *as a result of his failure to comply with an employer demand* which conflicted with his religious beliefs." *Id.* at 1373 (emphasis added). The court in *Wilshin* applied a commonsense, plain reading of the third element of a *prima facie* case of religious discrimination for failure to accommodate.  *Id.*  Again, plaintiff must demonstrate that he was disciplined for not complying with the conflicting employment requirement.  *Lubetesky*, 296 F.3d at 1306 n.2.  In *Wilshin*, the court held that, "since Plaintiff was never required to work on Saturday, it [was] impossible for him to have been disciplined or discharged for refusing to do so." *Id.* (footnote omitted) (bracketed alteration supplied).  In the present action, plaintiff admits that he has *never* been required to work on his Sabbath, despite AutoZone's seven-day availability policy.[112]  Therefore, it is equally "impossible" that plaintiff could have been "disciplined" for failure to comply with a requirement to which he has not been held.

Although the court could end its discussion here, the *Wilshin* case did not directly dispose of plaintiff's novel argument that failure to promote with continued

---

[112] Johnson Deposition, at 38-40, 90-91.

accommodation somehow constitutes "discipline" for the purposes of establishing a *prima facie* case of failure to accommodate.  The Sixth Circuit's recent decision in *Reed v. International Union*, 569 F.3d 576 (6th Cir. 2009), however, does just that. The *Reed* court held that the plaintiff failed to establish the "discipline" element when he "could not point to any 'discipline' other than the accommodation he claimed was unreasonable."  *Id.* at 581.  That court also noted that "'more than loss of pay is required to demonstrate discipline or discharge.'"  *Id.* (quoting *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)).  Plaintiff has not suffered a pay loss due to his religious beliefs or practices.[113]  Indeed, AutoZone has raised his pay every year of his employment with the company.[114]  More importantly, the *Reed* court's conclusion that it is not "discipline" when the employer can point only to the denial of the purported reasonable accommodation requested exposes the flaw in plaintiff's argument.  *Id.* at 581.  Plaintiff's contention that he was subjected to "discipline" is nothing more than a disguised characterization of his claim that he was not given the accommodation that he seeks.

Put simply, plaintiff asserts that AutoZone's willingness to allow him to hold a full-time management position while avoiding the company's seven-day availability

---

[113] Sherer Deposition, at 69; Johnson Deposition, at 261.

[114] Johnson Deposition, at 261.

policy is an unreasonable accommodation.[115]   According to plaintiff, that unreasonable accommodation constitutes "discipline" for the purpose of establishing a *prima facie* case of failure to accommodate a religious belief or practice.[116] As *Reed* held, an employee has not been subjected to "discipline" when he fails to "point to any discipline other than the accommodation he claimed was unreasonable." *Reed*, 569 F.3d at 581 (citation omitted).  That is precisely the argument that plaintiff advances in the present case.  The Sixth Circuit's holding in *Reed*, therefore supports the sensible conclusion that plaintiff's argument must fail.[117]

Accordingly, for all of the foregoing reasons, the court finds that plaintiff cannot establish a *prima facie* case of religious discrimination for failure to accommodate a religious practice or belief.  Plaintiff cannot demonstrate that he was

---

[115] Doc. no. 59, at 23-24.

[116] *Id.*

[117] The court has scoured decisions throughout all circuits in an unsuccessful attempt to find a case that specifically addressed a plaintiff's claim that a failure to promote constitutes "discipline" for the purposes of establishing a *prima facie* case of failure to accommodate a religious belief or practice.  Despite the absence of caselaw, which is telling in itself, the court is further convinced that it reaches the correct conclusion in finding that plaintiff has failed to establish a *prima facie* due to myriad cases in this circuit that have found employee *demotions* to be sufficient accommodations for religious beliefs and practices under Title VII.  *See, e.g.*, *Greenfield v. City of Miami Beach, Fla*, 844 F. Supp. 1519, 1225 (S.D. Fla. 1992) (finding employer's offer of a "flex-time" schedule to a Jewish employee "more than what was required by . . . Title VII," even when the schedule resulted in less pay); *Benefield v. Food Giant, Inc.*, 630 F. Supp. 78, 82 (M.D. Ala. 1985) (finding that demotion of Seventh-Day Adventist from Produce Manager to Stock Clerk so that he could observe his Sabbath did not violate Title VII's prohibition of discrimination on the basis of religion); *Mathewson v. Fla. Game & Fresh Water Fish Comm'n*, 693 F. Supp. 1044, 1050 (M.D. Fla. 1988) (finding employer's offering of a demotion to a Seventh-Day Adventist a reasonable accommodation of his religious belief).

subjected to "discipline" for not complying with an employment requirement that conflicted with his religious beliefs. *See*, *e.g.*, *Lubetesky*, 296 F.3d at 1306 n.2. Defendant is, therefore, entitled to summary judgment on plaintiff's failure to accommodate a religious belief or practice claim.

### b.     AutoZone's reasonable accommodation of plaintiff's religious beliefs

Even if plaintiff could demonstrate a *prima facie* case, his claim would still fail.  Once the plaintiff establishes a *prima facie* case of failure to accommodate a religious belief or practice, the burden shifts to the defendant to show that it offered the plaintiff a reasonable accommodation, or that any accommodation would have imposed an undue hardship on the company's business. *See*, *e.g.*, *Morrissette-Brown v. Mobile Infirmary Medical Center*, 506 F.3d 1317, 1321 (11th Cir. 2007).  The phrase "reasonably accommodate" is "not defined within the language of Title VII." *Beadle*, 29 F.3d at 592.  "Thus, the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis." *Id.*

Nevertheless, the Supreme Court has explained that a reasonable accommodation is one that "eliminates the conflict between employment requirements and religious practices." *Ansonia Board of Education v. Philbrook*, 479

U.S. 60, 70 (1986).  An employer is not required "to accommodate at all costs,"

however.  *Id.*  As the Eleventh Circuit stated:

> [C]ompliance with Title VII does not require an employer to give an
> employee a choice among several accommodations; nor is the employer
> required to demonstrate that alternative accommodations proposed by
> the employee constitute undue hardship.  Rather, the inquiry ends when
> an employer shows that a reasonable accommodation was afforded the
> employee, regardless of whether that accommodation is one which the
> employee suggested.

*Beadle*, 29 F.3d at 592 (internal citations omitted).

In *Beadle*, an employee requested not to be scheduled to work on Saturdays in

order to recognize his Sabbath as a Seventh-Day Adventist.  *Id.* at 590.  The employer

initially complied with plaintiff's request.  *Id.* at 591.  However, the employer later

informed the plaintiff it would no longer offer him a blanket off day, but that he was

free to arrange voluntary shift swaps, and it assisted in this effort.  *Id.*  The employer

further assisted by allowing the employee to supplement shift swaps with vacation

and sick days, as well as compensation time when he could not secure a swap,

provided that the employer could manage it.  *Id.*  However, when the employee was

scheduled to work on his Sabbath and failed to report, and on another occasion

walked out during the middle of a Saturday shift with no warning, the employer

terminated the plaintiff.  *Id.* at 593.

The Court in *Hillsborough* determined that the employer *exceeded* the standard

29

required by Title VII in providing a reasonable accommodation to plaintiff, and that it was justified in terminating him. *Id.* at 593. In the present case, AutoZone has placed no conditions on plaintiff's exemption from its seven-day availability policy. Plaintiff has always been allowed to recognize his Sabbath day free from work obligations.[118] Under the Eleventh Circuit's binding decision in *Hillsborough*, AutoZone could not possibly have failed to offer a reasonable accommodation to plaintiff. *See also Benefield v. Food Giant, Inc.*, 630 F. Supp. 78, 82-83 (M.D. Ga. 1985) (holding that *the demotion of plaintiff*, a Seventh-Day Adventist, from management position to store clerk was a reasonable religious accommodation under Title VII).

Finally, to the extent that plaintiff argues that only a promotion with a continued exemption from company policy would have been a reasonable accommodation, it is clear that plaintiff is not afforded a choice regarding the manner in which he is accommodated. "[T]he inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one which the employee suggested" or desired. *Beadle*, 29 F.3d at 592.

Thus, even if plaintiff had established a *prima facie* case of religious

---

[118] Johnson Deposition, at 38-40, 90-91.

discrimination for failure to accommodate his religious practices or beliefs, his claim would still fail.    AutoZone fulfilled its obligation of offering a reasonable accommodation for plaintiff's religious beliefs.    For that reason also, defendant is entitled to summary judgment on plaintiff's failure to accommodate claim.

### 2.    Disparate treatment religious discrimination

A plaintiff may attempt to establish a case of employment discrimination through the use of direct evidence or circumstantial evidence.    *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir.1999); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  Plaintiff asserts that he has produced both direct and circumstantial evidence of religious discrimination.

### a.    Direct evidence of religious discrimination

The court begins by noting that direct proof of discrimination is highly uncommon.  *See*, *e.g.*, *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1518 (11th Cir. 1990) (bracketed alteration supplied); *cf. Wright v. Southland Corp.*, 187 F.3d 1287, 1293-94 (11th Cir. 1999) (Tjoflat, J.,

writing for the panel) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic," and finding the outcomes reflected in prior case law consistent with that definition).  However, direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, [or] statements by decisionmakers unrelated to the decisional process itself." *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990) (citation and internal quotation marks omitted) (bracketed alteration supplied).

Here, plaintiff advances a perfunctory argument, wholly absent of analysis,[119] that he has direct evidence of religious discrimination.[120]  Plaintiff claims that the following exchange between Kay Hill, AutoZone's Regional Director of Human Resources, and plaintiff's counsel constitutes direct evidence:

> Q.   Okay.  If you were hiring [plaintiff] to come in off the street as just a full-time employee, under your scenario, you wouldn't even hire him?
>
> A.   We hire the best qualified candidate and included in that is availability.
>
> Q.   That is fine and dandy.  My question is: Under the scenario you just explained to me, what you look at when you're hiring

---

[119]  Indeed, defendant — correctly in this court's judgment — refers to plaintiff's direct evidence argument as "manifestly absurd and misleading."  Doc. no. 64, at 12.

[120]  Doc. no. 59, at 29-30.

someone or promoting somebody, that if they're not available
seven days a week, open availability, they don't get hired?  So if
[plaintiff] walked in off the street today to become a full-time
employee at AutoZone and if he wasn't available for that period,
he wouldn't get hired, would he?

A.    I don't believe so, not for a full-time position.

Q.    Okay.  Do you think any inquiry would be made as to whether he
could be accommodated or just if he wasn't available seven days
a week, not hired?

A.    As I said earlier, . . . the Divisional HR Manager — if it was
something out of the norm, which this probably would be, I
would expect the answer to be there's not an open availability.

Q.    Okay.  Just for a regular, full-time job?

A.    Right.[121]

Plaintiff's argument is not only conclusory and unsupported, but it is also

belied by the very testimony he cites.  The testimony by Ms. Hill indicates that she

would not be the decisionmaker in a hiring situation that is "out of the norm," and she

specifically includes plaintiff's circumstances in that category.[122]  Instead, she would

look to AutoZone's Divisional Human Resources Manager, who would be the

decisionmaker were plaintiff to just "come in off the street."[123]  Ms. Hill then offers

mere speculation as to the *Divisional Manager's decision* regarding whether to hire,

---

[121] Hill Deposition, at 56-58 (objections omitted).

[122] *Id.*

[123] *Id.*

despite the company's availability policy, stating what she would "expect" to be the Divisional Manager's decision.[124]   As noted above, direct discrimination does not include "statements by nondecisionmakers."  *See Alton Packaging*, 901 F.2d at 924.

Putting that issue aside, Ms. Hill's statements simply do not constitute direct evidence of discrimination.  "[C]ourts have found only the most blatant remarks, *whose intent could be nothing other than to discriminate on the basis of* [an illegal criterion such as religion], to constitute direct evidence of discrimination."  *Carter*, 870 F.2d at 582 (footnote omitted) (bracketed alterations supplied).  *See also Schoenfeld*, 168 F.3d at 1266 (quoting *Carter*, 870 F.2d at 582).  Ms. Hill's statements signify only an intent to enforce AutoZone's policy that full-time employees must be available to work seven days a week.[125]  Further, the discussion of whether plaintiff would be hired "today" as a full-time employee given his unavailability is irrelevant.  It is undisputed that plaintiff was hired as a part-time employee to which the full-time policy did not apply, and that he was promoted into a full-time position after having already been exempted from Saturday shifts.[126]  No reasonable factfinder could conclude that Ms. Hill's statements revealed an "intent [that] could be nothing other than to discriminate [against plaintiff] on the basis of"

---

[124] *Id.*

[125] *See id.*

[126] Johnson Deposition, at 34-40.

his religion. *Carter*, 870 F.2d at 582 (bracketed alterations supplied). Accordingly, the court rejects plaintiff's argument that there is direct evidence of discrimination in this case.

### b.   Circumstantial evidence of religious discrimination

Alternatively, plaintiff argues that he has presented circumstantial evidence of intentional religious discrimination.[127] Where the plaintiff seeks to prove intentional discrimination by using circumstantial evidence to show intent, the court must analyze the case using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that now familiar framework, the plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable factfinder to determine that he has satisfied the elements of a *prima facie* case. *Id.* at 802.

### i.   *Prima facie* case

Plaintiff alleges "failure to promote" as his basis for disparate treatment religious discrimination.[128] To make out a *prima facie* case of disparate treatment for failure to promote, the plaintiff can show that he: (1) was a member of a protected class; (2) was qualified for and applied for the promotion; (3) he was rejected despite

---

[127] Doc. no. 59, at 30-33.

[128] *See id.* at 30.

his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (citing *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)); *see also Rossi v. Troy State University*, 330 F. Supp. 2d 1240, 1246 (M.D. Ala. 2002) (citing essentially the same elements in the context of a religion-based disparate treatment claim for failure to promote); *Blanton v. Bunch & Associates, Inc.*, No. 8:04-CV-1057-T-27MAP, 2006 WL 269981, at *11 (M.D. Fla. Feb. 3, 2006) (same)).[129]

---

[129] Even though the fourth element — other equally or less qualified employees who were not members of the protected class were promoted — is routinely set forth as element of a *prima facie* case for failure to promote, the Eleventh Circuit has arguably held that it is not proper for this court to actually consider that element at the *prima facie* stage.

For many years, the Eleventh Circuit entertained two, conflicting lines of precedent defining the standards for a *prima facie* case when the employment position sought by a rejected applicant was filled by someone outside his or her protected class. The first, and oldest, line traces its origin to a decision by the former Fifth Circuit in *Crawford v. Western Electric*, Co., 614 F.2d 1300 (5th Cir. 1980). In that case, plaintiffs alleged they had been denied promotions because of their race (African-American). The *Crawford* court formulated the following standard:

> [P]laintiffs may establish a prima facie violation by showing that they are members of a group protected by Title VII, that they sought and were qualified for positions that [the employer] was attempting to fill, that despite their qualification they were rejected, and that after their rejection [the employer] either continued to attempt to fill the positions or in fact filled the positions with [persons outside the protected class].

*Id.* at 1315 (bracketed alterations supplied). The significance of the *Crawford* standard lies in the fact that it says nothing about the relative qualifications between the rejected plaintiff and the applicant to whom the promotion was awarded.

The second line of Eleventh Circuit precedent owes its heritage to *Perryman v. Johnson*

*Prods. Co.*, 698 F.2d 1138 (11th Cir. 1983), in which the panel added a relative qualifications requirement to the Crawford formulation of a *prima facie* promotion discrimination claim:

> A plaintiff may establish a *prima facie* case of promotion discrimination by proving that he or she is a member of a protected minority, was qualified for and applied for the promotion, was rejected despite these qualification, and that other employees *with equal or lesser qualifications* who were not members of the protected minority were promoted. . . .

*Id.* at 1142 n.7 (emphasis supplied) (citations omitted).

The decision in *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998), cleared a path through the tangle of conflicting circuit precedent by hewing to that "line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel." *Walker*, 158 F.3d at 1188 (citing, *e.g.*, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of prior panels are binding on subsequent panels, unless overturned by Congress, the Supreme Court, or an *en banc* Circuit opinion)).

Further, the *Walker* court observed that the Supreme Court clearly implied in *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981), and *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), that it is the defendant-employer who initially presents evidence of relative qualifications during the second, rebuttal stage of the *McDonnell Douglas* analytical framework — not the plaintiff-employee during his or her *prima facie* case. *Walker*, 158 F.3d at 1190-92.

> Since *Burdine*, we have continually recognized that relative qualifications belong in the rebuttal stage of the *McDonnell-Douglas* framework, not the prima facie stage. *See, e.g., Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir. 1984) (recognizing as a sufficient legitimate non-discriminatory reason for denying plaintiff a promotion was "the fact that '[t]he man drawn for the [coveted] position was selected because of his greater knowledge of postal requirements and because of [the plaintiff's] attendance problems'"); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 527 (11th Cir. 1983) ("The defendants successfully rebutted the [*prima facie*] presumption through evidence that they selected [the successful applicant] due to his superior qualifications for the position."); *Olafson v. Dade County Sch. Bd.*, 651 F.2d 393, 395 (5th Cir. 1981) (stating that the defendant employer successfully rebutted the plaintiff's *prima facie* case by "presenting evidence that [the successful applicant was successful] not because he was a man, but because, in their considered opinions, he was the best person for the job. It was then incumbent on the plaintiff . . . to prove she was 'the victim of intentional' discrimination" (footnote omitted)); *see also Hill [v. Seaboard Coast Line Railroad Co.]*, 885 F.2d [804] at 810 [(11th Cir. 1989)].

*Walker*, 158 F.3d at 1191 n.29 (bracketed alterations supplied). For such reasons, the court held that

the *Crawford* standard "is therefore the standard to be applied in the Eleventh Circuit." *Walker*, 158 F.3d at 1177.

*Walker* did not settle the issue, however.  Indeed, several panel decisions handed down after *Walker* are in direct conflict, and stand for the proposition that a plaintiff alleging a failure to promote must prove that the employee actually promoted was "equally or less qualified" than plaintiff, in order to establish a *prima facie* case under Title VII.  *See, e.g., Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999) (citing *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988) ("To establish a *prima facie* case of discrimination in promotion, a plaintiff must prove: (1) he or she is a member of a protected minority; (2) was qualified for and applied for the promotion; (3) was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted.")); *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000) (citing *Taylor*); *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (citing *Taylor*).

This court, like the district court in *Bernstein v. Sephora*, 182 F. Supp. 2d 1214 (S.D. Fla. 2002), "is at a loss to explain the reason for this dissonance" in Eleventh Circuit precedent, particularly because *Walker* predates *Lee* by almost two years.  Furthermore, *Lee*, *Alexander*, and *Taylor* made no reference to *Walker* and its detailed analysis of the intra-circuit conflict.  *Bernstein*, 182 F. Supp. 2d at 1221; *see also Norrell v. Waste Away Group, Inc.*, 246 F. Supp. 2d 1213, 1221 n.10 (M.D. Ala. 2003) (discussing intra-circuit conflict and following *Walker* when analyzing a Title VII claim for failure to promote based on plaintiff's gender).

Even so, this court "is persuaded by the careful reasoning of *Walker*," *Bernstein*, 182 F. Supp. 2d at 1221; and, "in the absence of help from the Circuit . . . will . . . follow *Walker*."  *Norrell*, 246 F. Supp. 2d at 1221 n.10 (citing *Mays v. Union Camp Corp.*, 114 F. Supp. 2d 1233, 1239 (M.D. Ala. 2000) ("The court follows the holding of *Walker* and will not require [plaintiff] to demonstrate that he was as or more qualified than the persons who were promoted in order to establish a *prima facie* case.")); see *also Morris v. Wallace Cmty. Coll. – Selma*, 125 F. Supp. 2d 1315, 1329 (S.D. Ala. 2001) (not requiring a plaintiff to show that she was equally, or more qualified, than the person to whom a promotion was awarded in order to state a *prima facie* case) (citing *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999) (addressing a Title VII failure to hire claim based on white male applicant's race and gender)); *Summerlin v. M&H Valve, Co.*, 167 Fed. Appx. 93, 94-95 (11th Cir. 2006) (applying *Walker* and not requiring plaintiff to demonstrate that the person promoted was equally or less qualified as part of a *prima facie* case for failure to promote).

Thus, the court recites all four elements of a failure to promote claim as a formality, but will not require that plaintiff present evidence as part of his *prima facie* case that he was equally or more qualified than the persons who were given the promotions he sought.  Accordingly, the court will consider the parties' arguments regarding that element in conjunction with its pretext analysis.

AutoZone argues that plaintiff has failed to demonstrate that he was "qualified for the promotion," and he, therefore, cannot meet the second or third elements of a *prima facie* case of failure to promote.[130]   A candidate for a Store Manager position at AutoZone must be available seven days a week.[131]   AutoZone provides numerous reasons in support of its policy that Store Managers be available, even when they are not scheduled to work.   For example, AutoZone claims, and provides evidentiary support, that Store Managers generally must be available to "deal with" the following scenarios:

> a robbery (Sherer Depo. at p. 318)[;] an employee injury (Sherer Depo. at p. 318)[;] an employee is caught falsifying a refund or stealing merchandise (Sherer Depo. at p. 304)[;] altercations between store employees (Lee Depo. at p. 93)[;] a management employee (such as a PSM) calls in sick or is unexpectedly absent on a day when that employee is scheduled to work (Sherer Depo. at p. 305; Pruett Depo. at p. 150)[;] to deal with customer issues (Pruett Depo. at p. 143; Roy Lee Depo. at p. 92)[;] the security alarm is triggered (Pruett Depo. at p. 143)[;] issues caused by inclement weather (Pruett Depo. at p. 147)[;] power outages (Pruett Depo. at p. 147)[;] slip-and-falls (Lee Depo. at p. 93)[; and] AutoZone hub truck accidents (Lee Depo. at p. 93).[132]

---

[130] Doc. no. 55, at 23.

[131] *See*, *e.g.*, Lee Deposition, at 31; Sherer Deposition, at 72; Riley Deposition, at 29.

[132] Doc. no. 59, at 18-19 (emphasis and bullet points omitted) (bracketed alterations supplied) (citations in original).  Plaintiff points out circumstances where other managers "can and do, handle situations *in the absence of a Store Manager* including robberies, theft, personnel issues, scheduling issues, customer issues, store alarm, accidents, and other concerns that may arise in a store."  Doc. No. 59, at 26 (emphasis supplied).  While that may be true, plaintiff's contention does nothing to undercut AutoZone's commonsense preference that the individual that it has entrusted with the responsibility of managing an entire store — the Store Manager — be the one to handle the matters cited by defendant, and that he or she maximize availability in order to do so.

It is also standard AutoZone policy that Store Managers work at least five out of six Saturdays per rotation.[133]  AutoZone has offered evidence that it maintains that requirement company-wide, a requirement established by its corporate scheduling department, because Saturdays are typically the busiest days of the week, more employees generally work on Saturdays, and sale volumes are particularly high on that day of the week.[134]  AutoZone contends that its seven-day availability requirement, as well as its scheduling rotation policy, are "qualifications" for promotion that plaintiff has been unable and unwilling to meet.[135]

In response, plaintiff contests the validity of AutoZone's seven-day availability policy.  Plaintiff's entire argument consists of the following:

> Plaintiff has presented evidence that this alleged "requirement" is not a written policy of the defendant, nor is it actually part of the job description/requirements for the store manger position. Additionally, defendant has continued to employ Byland as a store manager despite his unavailability to work for 10 months out of a year.[136]

---

[133] Sherer Deposition, at 306.

[134] Doc. no. 55, at 19-20 (citing Sherer Deposition, at 307, 309, 311-17 & Exhibit 1; Johnson Deposition, at 218-23 & Exhibit 22).

[135] Doc. no. 55, at 23.

[136] Doc. no. 59, at 30-31.  At other points scattered throughout his brief, plaintiff contests the legitimacy of this policy, but the evidence relied upon is insufficient to call it into doubt.  Plaintiff notes instances when defendant has made exceptions to the policy.  For example, plaintiff highlights the following as "evidence" that no seven day policy existed:  (1) plaintiff was not required to work seven days a week as Parts Sales Manager; (2) Store Managers are not "technically" on call twenty-four seven, though plaintiff omits the portion of the relevant testimony that states, "if there's a situation that arises with their store, they have to respond to that"; (3) Store Manager Bob Byland has been absent for leave approved under the FMLA for long periods and has not been replaced; (4)

40

The court finds plaintiff's argument patently insufficient.  Plaintiff omits any discussion of why a policy must be written in order for it to be effective.  As is evident from the record, AutoZone's seven-day availability policy is an undisputed fact.  Numerous individuals attested to that policy under oath, and AutoZone provided more than ample, reasonable justifications for its need to maintain the policy.[137]  Indeed, despite his contentions that he could easily work around the requirement, *even plaintiff repeatedly acknowledged* that AutoZone requires that senior management be at least available on Friday evenings and Saturdays, and that he was (and is) absolutely unwilling to meet that requirement, regardless of the circumstances.[138]  *See Rossi v. Troy State University*,  330 F. Supp. 2d 1240, 1246-47 (M.D. Ala. 2002) (finding plaintiff, a Jehovah's Witness, in religion-based disparate treatment action unqualified for one of the two promotions he sought and, therefore, unable to establish a *prima facie* case with respect to that promotion on the basis that

---

Store Manager Roy Lee missed three weeks of work for back surgery; (5) Store Manager Joe Courtney, who was eventually confronted and resigned, took approximately two Saturdays off each month to drag race; and (6) Store Manager James Pruett  has been called in less than five times during his off days and has not been called in on his vacation days.  *See* doc. no. 59 (Plaintiff's Response to Defendant's Statement of Undisputed Facts, Plaintiff's Additional Undisputed Facts, Plaintiff's Submission of Disputed Facts).  Even considering all of the facts set forth by plaintiff as supported by admissible evidence in the record, the court rejects his argument that no seven-day policy existed at AutoZone.  At most, plaintiff's argument establishes that AutoZone was willing to make exceptions to its policy for good reasons, plaintiff being one of those exceptions.

[137]  *See, e.g.*, Lee Deposition, at 31, 92-93; Sherer Deposition, at 72, 304-05, 318; Pruett Deposition, at 143, 147, 150; Riley Deposition, at 29.

[138]  *See* Johnson Deposition, at 152-53, 199-202, 206-09, 239-40, 266-67.

41

*plaintiff admitted he did not meet the employer's criterion* for promotion).

Further, Regional Director Bruce Sherer's confrontation of former Store Manager Joe Courtney about Mr. Courtney's unavailability on certain weekends evidences that AutoZone maintained the policy.[139] Mr. Sherer informed Courtney that he had to "make a decision" whether he wanted to continue racing on weekends or maintain his position as the Jordan Lane Store Manager.[140] Mr. Courtney effectively resigned after that conversation.[141] Regarding Store Manager Bob Byland, plaintiff conveniently omitted that he took leave protected under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*[142] If AutoZone were to remove him from the position of Store Manager, it could expose itself to liability for a violation of federal law. In other words, federal law expressly required that AutoZone provide Byland exactly the leave he received.

Accordingly, the court is unconvinced by plaintiff's scant and misleading argument. The court finds that plaintiff was not qualified for a promotion to a higher level management position because he admittedly could not meet AutoZone's availability requirement. Thus, plaintiff has failed to establish a *prima facie* case of

---

[139] *See* Courtney Deposition, at 18-26; Sherer Deposition, at 151-52.

[140] Sherer Deposition, at 151-52; Courtney Deposition, at 18-19, 54-55.

[141] *See* Courtney Deposition, at 15.

[142] Hill Deposition, at 91, 94-95.

disparate treatment religious discrimination, and AutoZone is entitled to summary

judgment on that claim.

Even so, the court will address plaintiff's final argument that he was qualified

for the promotions he sought.  Plaintiff challenges AutoZone's assertion that he was

not qualified on the basis of the company's Store Manager rotation schedule.  The

entirety of plaintiff's argument is as follows:

> As for the ability to work the store rotation, the defendant had an affirmative duty to take steps to see of [sic] Plaintiff could be reasonably accommodated under the framework of the rotation, including considering shift swaps, substitutions and flexible time.  *See Murphy*, 550 F. Supp. at 1187-88; and *Rice*, 410 F. Supp. 2d at 1310. The defendant failed to do so and should not be allowed to avoid liability by now taking such an ostrich in the sand approach.[143]

Though quick to point a finger at AutoZone for relying upon *some* authority out of

context, plaintiff has, again, continued his sweeping practice of doing just that.

Neither of the above-cited cases involved a disparate treatment religious

discrimination claim.  *See  Murphy v. Edge Memorial Hospital*, 550 F. Supp. 1185,

1187-88 (M.D. Ala. 1982) ("The only issue before the court . . .  is whether the

hospital could have reasonably accommodated [plaintiff's] religious practices without

incurring undue hardship") (bracketed alteration supplied); *Rice v. U.S.F. Holland,

Inc.*, 410 F. Supp. 2d 1301, 1308 (N.D. Ga. 2005) ("A plaintiff may utilize two

---

[143] Doc. no. 59, at 31.

theories in asserting religious discrimination claims:  disparate treatment and failure to accommodate.  In the present case, Plaintiff asserts a failure to accommodate claim.") (citations omitted).

Moreover, plaintiff has made it abundantly clear that his disparate treatment claim is based upon a "failure to promote."[144]  The elements of a *prima facie* case for such an action are distinct — and arguably easier to meet due to the absence of the "adverse employment action" element — from a garden variety disparate treatment claim.[145]  In *Murphy* and *Rice*, however, both plaintiffs were terminated by their employer and were, therefore, not seeking a promotion, *but a job*.  *See Murphy*, 550 F. Supp. at 1187; *Rice*, 410 F. Supp. 2d at 1308.  Moreover, the courts' analyses in both cases focused exclusively on whether the employer had provided (or needed to provide) a *reasonable accommodation* to the plaintiffs.  *See Murphy*, 550 F. Supp. at 1187; *Rice*, 410 F. Supp. 2d at 1302-08.  In both *Murphy* and *Rice*, the courts noted that the employers had some duty to at least make an attempt to accommodate the plaintiff's religious beliefs.  *See Murphy*, 550 F. Supp. at 1188; *Rice*, 410 F. Supp. 2d at 1310.  Notably, the *Murphy* court apparently found "several conversations"

---

[144] *See* doc. no. 59, at 30.

[145] Typically, to make out a *prima facie* case of disparate treatment, plaintiff must show:  (1) he is a member of a protected class; (2) he was qualified for the job; (3) *he suffered an adverse employment action*; and (4) defendant treated similarly situated employees outside the protected class more favorably.  *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *McDonnell Douglas Corp.*, 411 U.S. at 802.

between the parties, and the employer asking the plaintiff if "she had any solution to the problem" sufficient to discharge that duty. *Murphy*, 550 F. Supp. at 1187.

Obviously, neither of these failure to accommodate cases is relevant to plaintiff's failure to promote disparate treatment claim. The court will note, however, for the sake of argument, that he has admitted that his day of worship has always been accommodated by AutoZone.[146]  In the inconceivable event that the *Murphy* or *Rice* decisions are at all relevant to plaintiff's disparate treatment claim, the court finds that AutoZone, in never failing to allow plaintiff to observe his Sabbath, has more than taken "affirmative steps" to satisfy plaintiff's "religious practices." *Murphy*, 550 F. Supp. at 1187-88.  Thus, plaintiff has also failed to demonstrate that he was qualified for further promotion because he was completely unwilling to comply with AutoZone's Store Manager rotation schedule, which required that Store Managers work Saturdays.[147]

For the reasons set forth above, the court concludes that plaintiff's unavailability disqualified him for the promotions he sought.  Therefore, plaintiff has failed to establish the second and third elements of a *prima facie* case for disparate treatment religious discrimination on the basis of failure to promote.  *See*, *e.g.*,

---

[146] Johnson Deposition, at 38-40, 90-91.

[147] *Id.* at 201-02.

*Wilson*, 376 F.3d at 1089.  Accordingly, defendant is entitled to summary judgment on that claim.

> ## ii. Defendant's legitimate, non-discriminatory reasons and pretext

Even if the court overlooked the inadequacies of plaintiff's *prima facie* case, his disparate treatment claim would still fail.  If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce legitimate, non-discriminatory reasons for its actions against the plaintiff.  *See McDonnell Douglas*, 411 U.S. at 802.  If the defendant satisfies its requirement, the presumption of discrimination drops from the case, and the plaintiff must demonstrate that the employer's reasons are a mere pretext.  *See, e.g.*, *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 n.6 (11th Cir. 2000).

Assuming that plaintiff demonstrated a *prima facie* case, the burden shifts to AutoZone to rebut the resulting presumption of discrimination by producing evidence that it acted for a legitimate, non-discriminatory reason.  *McDonnell Douglas*, 411 U.S. at 802.  This burden is "exceedingly light."  *Meeks v. Computer Associates, International*, 15 F.3d 1013, 1021 (11th Cir. 1994).  AutoZone need not persuade this court that it was actually motivated by the proffered reason, but need only present evidence raising a genuine issue of fact as to whether it discriminated against

plaintiff. *Texas Department of Community Resources v. Burdine*, 450 U.S. 248, 254 (1981).

The court is satisfied that AutoZone has met its "exceedingly light" burden of articulating a legitimate, non-discriminatory reason for its refusal to promote plaintiff. According to AutoZone, "[p]laintiff was not considered for the Store Manager positions because of his unavailability, not because of his religious belief, <u>something he admitted to in his deposition testimony</u>."[148]  Additionally, AutoZone contends and supports with admissible evidence, that the individuals who were promoted instead of plaintiff received the promotions because they had qualifications far superior to those of plaintiff.[149]

Once the employer meets its burden of articulating a legitimate, non-discriminatory reason for the challenged employment action, the presumption of discrimination drops from the case, and the plaintiff must demonstrate that the employer's reasons are a mere pretext for discriminatory conduct. *See Johnson*, 234 F.3d at 507 n.6.

When an employer offers as its reason for not promoting a plaintiff the assertion that the person who was promoted was "more qualified," that allegation

---

[148] Doc. no. 55, at 25 (citing Johnson Deposition, at 229-37) (emphasis in original).

[149] *See id.* at 24-27.

casts upon plaintiff the burden to demonstrate that the stated reason is pretextual.  A plaintiff will only be successful if the "disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) (quotations and citation omitted); *see also Tippie v. Spacelabs Medical, Inc.*, 180 Fed. Appx. 51, 56 (11th Cir. 2006).  Moreover, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason," as long as "the reason is one that might motivate a reasonable employer."  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "[i]t is by now axiomatic that we cannot second-guess the business decisions of an employer"); *Roper v. Foley*, 177 Fed. Appx. 40, 49 (11th Cir. 2006) (noting that the "Supreme Court recently has clarified," contrary to prior Eleventh Circuit holdings, "that an employer's stated reasons for an allegedly discriminatory hiring decision" need not be so blatantly false as to "jump off the page and slap you in the face" in order to be considered pretextual) (citing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)).

Plaintiff has adduced admissible evidence of two Store Manager openings to

48

which he claims he was entitled.[150]  The first position opened in June of 2008, when

Joe Courtney resigned as the Jordan Lane Store Manager following Regional Director

Bruce Sherer's ultimatum that Mr. Courtney "make a decision" about whether he

wanted to remain Store Manager and work Saturdays or continue taking weekends

off.[151]  James Pruett was recommended for, and received the job.[152]  Mr. Pruett had

been an AutoZone employee for nineteen years, held the position of Assistant Store

Manager for approximately four years prior to assuming the Jordan Lane Store

Manager position, served as a Parts Sales Manager for several years, and had been in

management positions since 1993.[153]  Plaintiff, however, has never held a position

higher than Parts Sales Manager, has been employed with AutoZone only eleven

years, and has been in a lower-level management position only since 2003.[154]  Mr.

---

[150] Plaintiff attempts to argue that a less than six month "temporary" Assistant Manager position, which was filled by Keith Marchland, somehow constituted a job opening to which he was entitled.  Doc. no. 59, at 31.  The court rejects that argument, and will not consider it a promotional opportunity worthy of analysis under plaintiff's "failure to promote" claim.  Regardless, plaintiff did not present any argument regarding disparity between his qualifications and those of Mr. Marchland, nor did plaintiff submit an argument that Marchland was temporarily transferred into the position due to an unlawful, discriminatory motive.  *See id.*  Thus, plaintiff would fail to establish pretext with respect to that temporary position anyhow.  Further, plaintiff argues that he asked for and did not receive a promotion to a Regional Trainer position, but he supports that purported fact only with citations to his EEOC charge.  The court declines to acknowledge a fact supported only by inadmissible evidence.  *See* note 83 *supra*.

[151] Sherer Deposition, at 151-52; Courtney Deposition, at 54-55, 18-19.

[152] Sherer Deposition, at 156-58, 165-66, 168, 181-82; Courtney Deposition, at 59-60.

[153] Pruett Deposition, at 14-19.

[154] Johnson deposition, at 34-39, 167-70, 202.

Sherer testified that plaintiff was not considered for the position due to his unavailability, not his religion, and that James Pruett was his first choice regardless because Pruett was "more developed" and had been a management-level employee for much longer than plaintiff.[155]  Plaintiff argues that Sherer's testimony that plaintiff would have been considered for the position if not for his unavailability establishes that plaintiff and Mr. Pruett "were at least equally qualified."[156]  The court rejects that argument, and it is, regardless, irrelevant under the above-noted legal standard. James Pruett was clearly more qualified for the position than plaintiff, and plaintiff has hardly demonstrated "disparities in qualifications [that are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper*, 390 F.3d at 732.

The other Store Manager position to which plaintiff claims he was entitled became available in May of 2008 when the Madison Store Manager was terminated.[157]  Jeff Thacker, a former Store Manager who held the position of Territory Sales Manager (a higher position than Store Manager) assumed the

---

[155] Sherer Deposition, at 156-57.

[156] Doc. no. 59, at 31.

[157] Sherer Deposition, at 253-54.

position.[158]   Given his extensive senior management history, Mr. Thacker was undoubtedly more qualified for the position than plaintiff.  As with James Pruett, plaintiff has failed to point to disparities in qualifications that would lead a reasonable person to believe that the hiring decision may have been motivated by discriminatory intent.  Instead, plaintiff merely attempts to impermissibly second-guess the business decision of AutoZone.  *See Rowell*, 433 F.3d at 798-99.

In any event, the real question here is whether plaintiff has presented evidence that could lead a reasonable jury to conclude that AutoZone's hiring decisions were based upon a discriminatory motive.  The court is satisfied that he has not.  Plaintiff has repeatedly testified that his supervisors informed him that it was his availability — not his religion — that prevented further advancement in the company.  As already explained, AutoZone had policies in place that required senior management availability on Saturdays.   The company supported those qualifications with justifiable, business-related reasons.  Plaintiff has presented insufficient evidence that

---

[158] Sherer Deposition, at 194-97.  Plaintiff offers as a fact the statement that "Thacker was placed [at the Madison Store Manager Position] due to his ineffectiveness at the position he previously held," but points to no place in the record that supports his assertion.  Though it would make little analytical difference, the court will not consider facts unsupported by citation to the record.  The court is allowed to rely upon the facts and issues set out by the parties, and is not required itself to search through all of the parties' evidentiary submissions.  *See Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

*any action or inaction* by AutoZone was motivated by anything other than plaintiff's unavailability.

Accordingly, plaintiff has failed to establish "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [those reasons] unworthy of credence." *Silvera v. Orange County School Board*, 244 F.3d 1253, 1258 (11th Cir. 2001) (bracketed alteration supplied). Viewed objectively, James Pruett and Jeff Thacker were much more qualified than plaintiff for the Store Manager positions at issue.   Further, plaintiff has failed to rebut AutoZone's legitimate, non-discriminatory reason — that its hiring decisions were based upon qualifications and availability, not religion.   Therefore, even if plaintiff could meet his burden of demonstrating a *prima facie* case of disparate treatment religious discrimination for failure to promote, defendant would nevertheless be entitled to summary judgment on that claim.

## C.   Plaintiff's Claim for Religious Harassment Under Title VII

Plaintiff also asserts a claim for religion-based hostile work environment. Federal courts that have addressed the issue have consistently employed the same analytical framework to religion-based hostile work environment claims as is applied when the claim is for a hostile work environment based upon sexual or racial

harassment.[159]   The Eleven Circuit recently applied that same standard in *MackMuhammad v. Cagle's Inc.*, 379 Fed. Appx. 801 (11th Cir. 2010).  *Id.* at 804-05.  As the *Cagle's* court stated:

> [A] plaintiff wishing to establish a hostile work environment claim [must] show:  (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [religion]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Id.* at 805 (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (alterations in original); *see also Wheeles v. Nelson's Electric Motor Services*, 559 F. Supp. 2d 1260, 1271 (M.D. Ala. 2008) ("The standard for a hostile work environment based upon religious discrimination is the same as the one used for

---

[159] *See, e.g.*, *E.E.O. C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008) (hostile work environment claim based on religion requires showing that "harassment was (1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer"); *Cohen-Breen v. Gray Television Group, Inc.*, 661 F. Supp. 2d 1158 (D. Nev. 2009) (to state an actionable religion-based hostile work environment claim, plaintiff must show that "(1) she was subjected to verbal or physical conduct based on her religion; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment"); *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 387-88 (W.D. Pa. 2007) ("To make out a *prima facie* case for a religiously hostile work environment under Title VII, a plaintiff must demonstrate five similar elements: (1) the employee suffered intentional discrimination because of religion; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [religion] in that position; and (5) the existence of respondeat superior liability.").

[a] sexual harassment claim.") (bracketed alteration supplied).

The record reveals the following instances of purported religious harassment, as set forth by plaintiff in his statement of disputed facts:

> [Plaintiff] testified that he was harassed because of the lack of promotion, and because his Store Manager, Pruett, "would rag [him] all the time that Saturday was the busiest day and would make sure that [plaintiff] would look as [sic] the schedule to see the sales for the day." Pruett has done this to Johnson more than ten times. Pruett also told Johnson that he was "a broken record about his Sabbaths" and that Johnson needed to quit talking to him about Saturdays. Pruett has commented to Johnson that he is "going to get his in the end," and [sic] comments to Johnson that he is "my friend to the end" while smirking at him.[160]

As AutoZone argues, such incidents, viewed cumulatively and under the totality of the circumstances, are far too innocuous and equivocal to satisfy the "severe or pervasive" prerequisite for a hostile work environment claim.[161] "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (citations omitted). Rather, "Title VII is only implicated in the case of a workplace that is permeated with discriminatory intimidation, ridicule and insult, not where there is the mere utterance of an . . . epithet." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276-77 (11th Cir. 2002) (citation and internal

---

[160] Doc. no. 55, at 19 (citing Johnson Deposition, at 237-40, 253-54).

[161] Docs. no. 55, at 27-38, 64, at 13-15.

quotation marks omitted). This criterion is plainly not satisfied here. Plaintiff has pointed to nothing more than isolated incidents that were infrequent and mild, that were in no way threatening or humiliating, and are, at least in part, mere acknowledgments by his supervisor of his awareness of the importance of plaintiff's faith to his daily life. *See generally McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (for purposes of "severe or pervasive" inquiry, courts consider totality of circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance") (citations omitted).

Plaintiff's allegations are simply not enough, and courts in this circuit have consistently dismissed religious hostile work environment claims for similar infirmities of proof. *See*, *e.g.*, *Wheeles*, 559 F. Supp. 2d at 1272 (dismissing religious harassment claim where plaintiff failed to satisfy "severe or pervasive" requirement and complained-of conduct was nothing more than "slightly insulting"); *Cagle's*, 379 Fed. Appx. 801 at 805-06 (holding that Muslim employee was not subjected to religious harassment when manager referred to him as "Bin Laden" or "Muhammad-man" over company radio and intercom, and where supervisors asked him about his religion and made comments about his religious dietary restrictions,

because such comments were at most insensitive and rude, and did not rise to the level of severe and pervasive harassment); *Richardson v. Dougherty County, Georgia*, 185 Fed. Appx. 785, 790-91 (11th Cir. 2006) (rejecting Title VII hostile work environment claim where supervisor referred to plaintiff more than fifty times as "preacher man" and made comments about his religion and request for accommodation, where such conduct was not objectively severe or pervasive); *Jones v. United Space Alliance, L.L.C.*, 170 Fed. Appx. 52, 55-56 (11th Cir. 2006) (dismissing hostile environment claim because complained-of conduct was not objectively severe or pervasive, where manager made derogatory remarks based on plaintiff's religion, co-worker removed flyer advertising plaintiff's church events, manager told him to remove lanyard with name "Jesus" on it, manager told him not to leave his Bible on his desk, and he was asked to turn down religious music played at work).

Accordingly, the court finds as a matter of law that the incidents of harassment to which plaintiff refers are not actionable under Title VII because they were not "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (bracketed alteration supplied). Defendant is, therefore, entitled to summary judgment with respect to plaintiff's religious harassment claim.

### D.   Plaintiff's Claim Under Title VII for Retaliation

To establish a claim of retaliation under Title VII, a plaintiff must prove that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there was some causal relation between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).   After a plaintiff establishes a *prima facie* case, the employer must proffer a legitimate, non-discriminatory, and non-retaliatory reason for the adverse employment action. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).   If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is pretext for discrimination or retaliation. *Id.* "The plaintiff must meet the reason proffered head on and rebut it." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007).

Plaintiff first engaged in a protected activity when he filed his EEOC charge alleging religious discrimination and retaliation on June 25, 2008.[162]   The question

---

[162]   At no point in the retaliation section does plaintiff identify precisely when he first engaged in statutorily protected activity, or that he did at all.  *See* doc. no. 59, at 34-37.  The court declines plaintiff's invitation to sift through the record and determine when plaintiff may have first engaged in activity protected by Title VII.   A litigant on summary judgment cannot shift their burden to the court with the expectation that it will unearth any beneficial evidentiary nuggets that the filer may have neglected to mention. *See, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061, 1068 (S.D. Ala.2007) ("Parties may not, by the simple expedient of dumping a

that the court must address, therefore, is whether, after that date, plaintiff suffered a materially adverse action that was causally related to his protected activity. *See*, *e.g.*, *Goldsmith*, 513 F.3d at 1277.

Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). However, in order to sustain a Title VII retaliation claim, an employee must show that "a reasonable employee would have found the challenged action materially adverse," such that the action would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68. "[T]rivial harms" and "petty slights" do not constitute adverse employment actions. *Id.*

The only "materially adverse action" that plaintiff claims occurred after the filing of his EEOC charge was the alteration of his performance evaluation and decrease in pay.[163] Plaintiff argues that Store Manager James Pruett's lowering of his

---

mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions."); *Carolina Acquisition, L.L.C. v. Double Billed, L.L.C.*, 627 F. Supp. 2d 1337 (S.D. Fla. 2009) ("Federal judges are not archaeologists. We possess neither the luxury nor the inclination to sift through that mound of obfuscation in hopes of finding a genuine issue of material fact to deny summary judgment.") (citation omitted). Accordingly, the court will not squander scarce resources looking through hundreds of pages of evidentiary submissions for a shred of evidence indicating that plaintiff engaged in a protected activity at some point prior to the filing of his EEOC charge. Recognizing that the filing of that charge is clearly statutorily protected activity, and that plaintiff at least mentioned that charge, the court will begin its analysis at that stage.

[163] *See* doc. no. 59, at 34-37.

evaluation score per the instructions of Regional Director Bruce Sherer resulted in a pay loss, and, therefore, constituted an adverse action.  Under Mr. Pruett's original evaluation of plaintiff, he received a perfect score and a pay increase from $14.52 to $14.79 per hour.[164]  At that time, however, Pruett was a "brand-new store manager," and Director Sherer sat down with him to go over the evaluations.[165]  Upon review, Sherer concluded that many employees, including plaintiff, were evaluated improperly by Pruett and, accordingly, given erroneous raises.[166]  Mr. Sherer directed Pruett to lower the evaluation scores of plaintiff, as well as other employees under Pruett's supervision.[167]  Plaintiff's score was altered to reflect "exceptionally met," instead of "exceptional."[168]  In accordance with the alteration, plaintiff's pay was reduced back to $14.52 per hour on October 19, 2008.[169]  What plaintiff omits from his argument, however, is that *only a week later*, on October 26, 2008, AutoZone adjusted Mr. Pruett's employees' pay to reflect the corrected evaluations, and *plaintiff's pay was increased* from $14.52 to $14.92, a higher raise than he received

---

[164] Sherer Deposition, at 211-12; *see also id.*, at Exhibit 5.

[165] Sherer Deposition, at 211-12.

[166] *Id.* at 211-12, 319-20; Sherer Affidavit, ¶¶ 3, 5, 6.

[167] Pruett Deposition, at 168; Johnson Deposition, at 254-55.

[168] Pruett Deposition, at 168.

[169] Sherer Deposition, at 211-12; *see also id.*, at Exhibit 5.

under his original evaluation.[170]

A week-long decrease in pay that was followed by a raise is hardly a "materially adverse action." *See Burlington*, 548 U.S. at 68. The same is true regarding the alteration of plaintiff's performance score from essentially perfect to almost perfect. Those actions, if harms at all, were "trivial" at best, and the court seriously doubts that they would even fall under the category of "petty slights," which are also insufficient to constitute a "materially adverse action" for the purposes of a Title VII retaliation claim. *See id.* Regardless, neither a short-lived pay decrease, nor the insignificant adjustment of a single performance evaluation would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *See id.* Indeed, plaintiff was not dissuaded from engaging in further protected conduct, as he filed this lawsuit well after the evaluation adjustment.[171] Thus, plaintiff's retaliation claim fails because he cannot establish that he was subjected to a materially adverse action for the purposes of establishing a *prima facie* case of retaliation. *See, e.g.*, *Goldsmith*, 513 F.3d at 1277.

Plaintiff has also failed to establish the third element of a *prima facie* case because he cannot demonstrate a causal link between his complaint of religious

---

[170] Sherer Deposition, at 213, 230, 272-73; Sherer Affidavit, ¶¶ 6-8.

[171] *See* doc. no. 1.

discrimination and any alleged materially adverse action. A plaintiff may establish the requisite causal connection by showing that "the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1189 (11th Cir. 1985). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Goldsmith*, 996 F.2d at 1163 (citations omitted).

On this issue, plaintiff claims, without citation to anything other than his EEOC charge, only that plaintiff's charge of discrimination "was sent to the Defendant in July 2008."[172] Assuming that the EEOC charge is admissible evidence on this issue, plaintiff has demonstrated at most that *someone* at AutoZone may have been aware of plaintiff's protected activity. However, the record is devoid of evidence that Director Sherer or Store Manager Pruett had knowledge of plaintiff's protected activity at the time they took the alleged "materially adverse actions." Plaintiff has failed to direct the court to evidence in the record supporting the conclusion that either decisionmaker had knowledge of plaintiff's protected activity. Having failed to show that a decisionmaker was aware of the protected activity at the time he or she allegedly subjected plaintiff to a "materially adverse action," plaintiff cannot

---

[172] Doc. no. 59, at 36.

demonstrate a causal link between the protected conduct and the purported adverse action. *See Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (stating in context of retaliation claim that, in order to establish the causation element, the plaintiff must "show that the decision maker was aware of the protected conduct at the time of the adverse employment action . . . . That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him").

Thus, plaintiff's retaliation claim fails at the second and third elements, and he is, therefore, unable to demonstrate a *prima facie* case of retaliation. *See*, *e.g.*, *Goldsmith*, 513 F.3d at 1277. Accordingly, defendant is entitled to summary judgment on that claim.

The court also notes that even if plaintiff could establish a *prima facie* case of retaliation, and even if the court considered the smallest action or inaction alleged against AutoZone "materially adverse," defendant would, nevertheless, be entitled to summary judgment. For the reasons already stated in the disparate treatment section of this memorandum opinion and order, plaintiff cannot show that AutoZone's proffered legitimate, non-discriminatory, and non-retaliatory reasons for its conduct (its decisions were based upon availability, not religious beliefs or practices) were mere pretext for intentional discrimination.

62

## IV. CONCLUSION AND ORDER

In conclusion, plaintiff would be well-advised to remember that neither "every unkind act,"[173] nor "everything that makes an employee unhappy,"[174] amounts to an actionable, adverse employment action under the federal employment discrimination statutes.  "Otherwise," as is clearly demonstrated by the events complained of in the present case, "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."  *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (Posner, C.J.) *quoted with approval in Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998).

In any event, following consideration of the pleadings, motions, and evidentiary submissions, it is ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment be, and the same hereby is, GRANTED, and *all* of plaintiff's claims are DISMISSED *with prejudice*.  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE and ORDERED this 24th day of February, 2011.

---

[173] *Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir. 1993) (*per curiam*)).

[174] *Id.* at 1450 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

_____
United States District Judge